ELADIO PLAZA GONZÁLEZ, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada.

*Número:* CI-65-5      *Resuelto:* 31 de enero de 1967

*Víctor Tirado Saltares,* abogado del recurrente; *Donald R. Dexter, Milagros Muñoz Bou, Gilberto Cobián Aparicio* y *Jorge*

*Márquez González,* abogados del Administrador del Fondo del Seguro del Estado.

Sala Segunda integrada por su Presidente el Juez Asociado Señor Belaval y los Jueces Asociados Señores Hernández Matos, Santana Becerra y Dávila.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

En este recurso, contra una decisión de la Comisión Industrial, se trata de si la determinación y valoración, hechas por el Administrador del Fondo del Seguro del Estado, de la incapacidad visual, parcial y permanente, sufrida por el obrero Eladio Plaza González, se ajustan a ciertas disposiciones de la Ley de Compensaciones por Accidentes del Trabajo de 1935, vigentes en la fecha del accidente del trabajo que lo originó.

Expondremos en primer término esas disposiciones legales, y en segundo, el cuadro de los hechos y circunstancias concurrentes.

Tal como se encontraba enmendado para el 29 de febrero de 1964, en lo aquí pertinente, ese estatuto disponía:

INCAPACIDAD PARCIAL PERMANENTE

"3. Se considerará incapacidad parcial permanente la pérdida de un pie o pierna, una mano, un brazo, un *ojo,* uno o más dedos, ya sea de los pies o de las manos y cualquiera anquilosis o fractura o dislocación donde haya habido rotura de ligamentos y donde la restauración no sea completa. Por las incapacidades parciales permanentes especificadas a continuación, el obrero o empleado lesionado recibirá una compensación adicional *consistente en el sesenta y seis y dos tercios (66⅔) por ciento del jornal que percibía el día del accidente,* o que hubiera de percibir a no ser por la ocurrencia del accidente, *durante el número de semanas* según se fija en la tabla que se inserta a continuación; Disponiéndose, que en ningún caso se pagará al obrero o empleado más de treinta y cinco (35) dólares ni menos de ocho (8) dólares por semana; y Disponiéndose, además, que en ningún caso se pagará una suma mayor de seis mil (6,000) dólares." Art. 3, Inciso 3, párrafo Primero.

.    .    .    .    .    .    .    .

"Las incapacidades visuales permanentes se determinarán y valorarán por el Administrador del Fondo del Seguro del Estado conforme al dictamen pericial de un oculista; Disponiéndose, que las incapacidades parciales serán determinadas de acuerdo con el porcentaje de la incapacidad total que ellas representen tomando en consideración la eficiencia visual industrial de ambos ojos y aplicando, al efecto, los factores uno y tres, para el peor y mejor ojo respectivamente; y Disponiéndose, además, que *por la pérdida del globo ocular por enucleación, evisceración o atrofia extrema se indemnizará diez (10) por ciento de incapacidad total permanente en adición a la incapacidad visual resultante.*

"*La pérdida funcional completa y permanente de cualquier miembro que afecte la capacidad industrial* del obrero, o su poder adquisitivo, *se considerará como pérdida total de dicho miembro tal como si hubiese sido amputado.*" Art. 3, Inciso 3, párrafo Tercero. (Subrayado nuestro.)

Veamos los hechos.

El mencionado obrero agrícola Eladio Plaza González, de 65 años de edad, trabajaba el 29 de febrero de 1964, en una finca del barrio Garzas de Adjuntas, dedicada al cultivo de cidras, propiedad de la Sucn. Vidal Rivera Feliciano. En ese día, mientras levantaba una mata de cidra para podarla, "salió un gancho de otra mata que tenía enredada y le dio en el ojo derecho."

Su caso fue informado al Fondo del Seguro del Estado. Recibió el obrero el 2 de marzo siguiente primera cura en el Dispensario de Ponce. El doctor Fiol Bigas lo refirió al Instituto Oftálmico para examen e informe. De la hoja de "Baja del Oculista," aparece que fue examinado por el Dr. Guillermo Fernández el 22 de abril de 1964 y que su lesión era "Herida penetrante de la córnea y cristalino con catarata traumática completa, ojo derecho." Se recomendó en la misma hoja: "La catarata traumática del ojo derecho, resultante de su accidente de 29 de febr., 1964, debe ser sometida a extracción quirúrgica, y recomendamos la hospitalización del lesionado."

Después de recibir el máximo tratamiento médico, los doctores Fernández practicaron en 2 de septiembre de 1964 un examen final del obrero y encontraron que presentaba las siguientes condiciones: "Afaquia quirúrgica y coloboma artificial del iris y pequeña cicatriz de herida penetrante de la córnea lado nasal, ojo derecho." Afaquia o afagia es la falta del cristalino. Coloboma es una fisura o hendedura del iris.

El dictamen pericial de esos dos distinguidos oculistas fijó al obrero la siguiente incapacidad visual parcial *permanente*, como consecuencia del accidente: *"Pérdida de la visión industrial del ojo* derecho que equivale a veinticinco por ciento (25%) de *incapacidad total permanente."*

A base de tal dictamen, el 8 de octubre de 1964, el Administrador del Fondo del Seguro del Estado determinó y valoró la incapacidad visual parcial permanente en ese 25% y ordenó:

"... que se le pague en total y de una sola vez una compensación adicional equivalente al 60% del jornal que ganaba el día del accidente, que no será menor de $6.00 ni mayor de $22.00 semanales por un período de 112½ semanas, la que ascienda a la suma de $945.00."

Apeló el obrero de esa orden ante la Comisión Industrial, manifestando su inconformidad y solicitando se le aumentara la incapacidad.

El 18 de mayo de 1965 se celebró una vista médica ante la Comisión Industrial, compareciendo a la misma el obrero y los doctores Calcagno, por el Fondo del Seguro del Estado y Vázquez Millán, Director de la División Médica de dicha Comisión Industrial. Declaró el obrero que no veía nada por su ojo derecho. Los doctores allí presentes le habían examinado ese ojo antes de esa audiencia. Luego de exponer los antecedentes del caso, declaró el doctor Vázquez Millán:

"Al día de hoy creemos la incapacidad fijada es justa y razonable, ya que esto es lo que otorga la Ley de Compensaciones en estos casos."

El presidente de dicha Comisión Industrial al finalizar la audiencia se manifestó así:

"La Ley de Compensaciones a Obreros no contempla darle mayor incapacidad por la pérdida de su ojo derecho ya que la incapacidad que se le ha dado es el máximo que fija la Ley. *Sabemos que es cierto que usted no ve nada por su ojo derecho*, sin embargo, ya la Ley le ha dado el máximo de incapacidad que se lo puede dar. Así que no podemos hacer nada más por usted." (Subrayado nuestro.)

La Comisión Industrial el 24 de mayo de 1965, dictó resolución confirmando la decisión del Administrador del Fondo del Seguro del Estado. Denegó una solicitud de reconsideración el 29 de julio siguiente.

Apeló el obrero ante nos. Por carecer de representación legal designamos a la Sociedad para Asistencia Legal para que le prestara al recurrente la asistencia profesional necesaria para perfeccionar el recurso y luego libramos auto para revisar la resolución de la Comisión. El Lic. Víctor Tirado Saltares en representación de la Sociedad para Asistencia Legal radicó un interesante memorando sobre los méritos del recurso. El abogado del Administrador del Fondo del Seguro del Estado no ha contestado dicho alegato. Después de haber formulado una moción para desestimar, a todas luces frívola, en este serio recurso ha asumido la olímpica posición de someterlo "por los documentos que aparecen en los autos del mismo y especialmente el contenido de la resolución de la Comisión Industrial de 24 de mayo de 1965." El obrero apelante señala la comisión de los siguientes errores:

"*Primer Error*: El por ciento de incapacidad parcial permanente que le fijó al obrero el Administrador del Fondo del Seguro del Estado y que confirmó la Comisión Industrial es erróneo.

"*Segundo Error*: El Administrador del Fondo del Seguro del Estado usó una fórmula errónea para computar la compensación que el obrero tenía derecho.

"*Tercer Error*: La Comisión Industrial cometió error al no concederle al obrero el 10% de incapacidad adicional que fija la

ley habiendo prueba suficiente en los autos que demuestra la atrofia extrema del ojo lesionado."

I—Creemos que el primer error apuntado no fue cometido. La incapacidad fijada como "pérdida de la visión industrial del ojo derecho que equivale a veinticinco por ciento (25%) *de incapacidad total permanente*" para el trabajo, está sostenida por los siguientes doctores, que en forma más o menos intensa, examinaron o trataron médicamente al obrero: Dr. J. Fiol Bigas, Dr. G. Fernández, Dr. R. Fernández, Dr. Mario Calcagno, Dr. R. Vázquez Millán y Dr. Andrés Montalvo Carroll, éste, oftalmólogo consultor de la Comisión. Entre ellos hubo unanimidad en la fijación del por ciento de incapacidad visual. Frente a esos seis peritos médicos nada tenemos que nos indique, o sugiera, que estuvieran equivocados en perjuicio del obrero lesionado.

II—A juicio nuestro se incurrió en el segundo error señalado. Sostiene el apelante que la compensación debió computarse a base de un 66 2/3% del salario diario de $2.80 que ganaba el día del accidente, y no a base del 60% de tal salario que tomó el Administrador. En ello tiene razón. Con arreglo a las disposiciones legales que dejamos transcritas a las páginas 908 y 909, por las incapacidades parciales permanentes—la pérdida de un ojo es una de ellas— "el obrero o empleado lesionado recibirá una compensación adicional consistente en el sesenta y seis y dos tercios (66 2/3%) por ciento del jornal que percibía el día del accidente . . . durante el número de semanas que se inserta a continuación . . .".

Por tanto para valorar la compensación principal a pagarse al obrero, el cómputo debió hacerse a base del 66 2/3% del jornal de $2.80 que él percibía el día del accidente, y no sobre el 60% de ese jornal.(¹) Por este por ciento, se

------

(¹) Ese por ciento ha sido variado progresivamente, La Ley Núm. 45 de 1935, inicialmente lo fijó en 50%; se subió a 60% por la Núm. 94 de 1957 y, finalmente, se fijó en 66⅔% por la Núm. 101 de 1960, que empezó a regir el 25 de junio de ese año. Lo mismo ha ocurrido con el

compensa cada uno de los cinco días laborables de cada semana—según la definición de "semana y día" del Art. 3 de dicha Ley—a $1.68. Por el del 66 2/3% a $1.8666. La diferencia de dieciocho y dos tercios de centavos por día no la hubiera recibido el obrero como resultado del cómputo erróneo.

■ III—El tercer error señalado también fue cometido. Por mandato de la disposición de la ley que dejamos transcrita en segundo término, en este caso, en que, conforme al dictamen de varios oculistas, sufrió el obrero la pérdida funcional completa y permanente de su ojo derecho, que indiscutiblemente afecta su capacidad industrial y su poder adquisitivo en un 25%, como determinó el Administrador y aceptó la Comisión Industrial, él tenía derecho a recibir otro diez por ciento (10%) de incapacidad total permanente en adición a la incapacidad visual resultante. En otras palabras, en esa situación equivalente a una amputación del ojo, del máximo de 450 semanas que fija ese Art. 3, en su inciso 4, párrafo 5, debió también concedérsele compensación por otras 45 semanas, (²) en adición a las 112 1/2 semanas que correspondían al 25% de incapacidad visual resultante del accidente.

■ Con esto se eleva el máximo de semanas compensables a 157 1/2, que suman 787.50 días laborables, que pagados a $1.8666 por cada día, arrojan una compensación total de $1,469.95.

Entre la compensación sencilla de $945.00 fijada por el Administrador—por 562.50 días a $1.68 por día—y la que

número máximo de semanas de compensación y las cantidades máximas a pagarse. Sin embargo, a pesar de que la enmienda hecha por la Ley 115 de 1953 definió a la semana como una compuesta de seis días laborables, por la Núm. 101 de 1960 la semana laboral se redujo a cinco días, que altera notablemente el cómputo de la compensación final en perjuicio de los obreros.

(²) Esta compensación adicional no la disponía la ley originalmente. Se concedió por la enmienda introducida por la Ley Núm. 284 de 15 de mayo de 1945. Desde entonces el 10% de incapacidad total permanente adicional a la resultante no se ha alterado.

ahora señalamos en $1,469.95, existe la diferencia sustancial de $524.95.

*Por lo expuesto deberán modificarse la resolución de la Comisión Industrial de fecha 24 de mayo de 1965 y la decisión del Administrador del Fondo del Seguro del Estado de 8 de octubre de 1964, en el sentido de aumentar a $1,469.95 el importe de la compensación final a recibir el obrero Eladio Plaza González, como consecuencia del accidente del trabajo que sufriera el 29 de febrero de 1964, y así modificadas, confirmarse.*